**UNITED STATES et al. v. ARCHER.**

No. 4390.

United States Court of Appeals
First Circuit.

May 11, 1949.

---

[1] See opinion of this Court in Martin v. Hiatt, Warden, 1949; 174 F.2d 350.

174 F.2d—23

354

Sumner M. Redstone, Sp. Asst. to Atty. Gen. (Theron Lamar Caudle, Asst. Atty. Gen., Ellis N. Slack and Philip R. Miller, Sp. Assts. to Atty. Gen., and William T. McCarthy, U. S. Atty. and W. Arthur Garrity, Jr., Asst. U. S. Atty., both of Boston, Mass., on the brief), for appellants.

Albert L. Hyland, of Boston, Mass. (Stewart C. Woodworth and Lyne, Woodworth & Evarts, all of Boston, Mass., on the brief), for appellee.

Before MAGRUDER, Chief Judge, and MARIS (by special assignment) and WOODBURY, Circuit Judges.

MARIS, Circuit Judge.

These consolidated appeals present the question whether the district court was right in holding that the estate of Frank M. Archer, Sr., deceased, was not subject to income tax for the year 1938 on the sum of $50,000 received in that year in settlement of a claim of the decedent against one Francis E. Thompson.

Archer died on April 8, 1937. Prior to and at the time of his death he had been asserting a claim for $300,000 against Thompson on account of an oral agreement made many years before by which Thompson was alleged to have promised the decedent that if he remained in the employ of the Moxie Company Thompson would see to it that he would receive over the course of his service with that company as much as Thompson's brother actually received in salary and dividends plus an amount equal to the increase in the value of stock of the company held by Thompson's brother. The decedent had continued in the employ of the Moxie Company up to the time of his death, being at that time chairman of the board of directors and general manager.

Although Archer had been negotiating with Thompson with respect to his claim prior to his death nothing had come of the negotiations up to that time. After his death, however, the Moxie Company brought a suit against Thompson alleging mismanagement of its affairs and the present plaintiff, Archer's administrator, cooperated in that suit and in the course of it continued to assert the decedent's claim against Thompson. A settlement of both claims was reached in April, 1938. The Moxie Company received a substantial payment from Thompson and the plaintiff, as administrator of Archer's estate, received the sum of $50,000 the taxability of which is here in controversy, from Thompson on April 16, 1938 in settlement of the claim previously asserted by the decedent.

The plaintiff says that he was advised by counsel that the $50,000 thus received was

not income of the estate but merely represented the collection of a debt due it. He did not include the $50,000 as an accrued item in the income tax return of the decedent for the period ending with his death and he filed no income tax return for the estate for the year 1938. He did file an estate tax return in July, 1938 which showed that the decedent did not have sufficient net assets to be subject to estate tax and in this return he reported the $50,000 claim against Thompson as an asset of the estate valuing it at $50,000 as of one year after the decedent's death in accordance with the option given by Section 302(j) of the Revenue Act of 1926, as amended, 26 U.S.C.A. § 811(j).

The Commissioner of Internal Revenue, being in doubt as to whether the item of $50,000 was subject to income tax in 1937 or in 1938, asserted deficiencies, based upon it, for both years. With respect to the deficiency asserted for 1937 he stated that the $50,000 represented compensation accrued to the decedent at the time of his death. The alternative deficiency proposed for 1938 was based upon the ground that the sum of $50,000 represented income which was actually received in that year For 1938 the Commissioner also determined under Section 291 of the Revenue Act of 1938, 26 U.S.C.A. § 291, an additional deficiency of 25% as a penalty for the failure to file an income tax return for the estate for that year. The plaintiff filed a petition for redetermination of the deficiency for the year 1937 with the Board of Tax Appeals but failed to file a timely petition with respect to the 1938 deficiency.

The basis for the Commissioner's contention that the $50,000 item here involved was taxable to the decedent's estate for 1937, the taxable period in which he died, was the provision of Section 42 of the Revenue Act of 1936, 26 U.S.C.A. § 42, that: "In the case of the death of a taxpayer there shall be included in computing net income for the taxable period in which falls the date of his death, amounts accrued up to the date of his death if not otherwise properly includible in respect of such period or a prior period."

Upon consideration of the decedent's 1937 tax liability the Board of Tax Appeals held that the $50,000 claim had not accrued in that, or in any other actual amount at the date of the decedent's death within the meaning of Section 42 and was, therefore, not taxable for the year 1937. Estate of Frank M. Archer, 1942, 47 B.T.A. 228. In discussing the matter the Board said: "At the date of death, decedent had a stale claim for $300,000 upon which demand had been made and refused. Because it was based upon an oral promise which antedated the statutory period of limitations, counsel advised the administrator against suit. Whether, under these circumstances, the claim had any value can not as a matter of fact be determined upon the evidence in the present record, although superficially it would appear to have had none. Nevertheless, the claimee a year later so far acknowledged the validity of the claim as to pay $50,000 in discharge of it. This may be enough to justify the Commissioner in treating the claim as valid and as having had a value of $50,000 at the time of decedent's death; although we do not say it was. But at best, this validity and value at the date of death are constructive, being based upon nothing known at the time of death, but upon subsequent events. Such a rationalized validity and value do not support an accrual of the claim as income up to the time of death, especially of one on the cash basis. 'Accruals here are to be construed in furtherance of the intent of Congress to cover into income the assets of decedents, earned during their life and unreported as income, which on a cash return would appear in the estate returns', Helvering v. Enright, supra [312 U.S. 636, 61 S.Ct. 777, 85 L.Ed. 1093]. This $50,000 was not such as would appear on the estate's income tax return before its actual receipt in April 1938, nor if decedent had lived would it have been included in his income before he received it. He would not before its receipt have regarded it as accrued income, even if he had kept his accounts on an accrual method. Something more than a disputed assertion of a claim is needed to constitute accrued income; Jamaica Water Supply

Co. v. Commissioner, 2 Cir., 125 F.2d 512; certiorari denied, 316 U.S. 698, 62 S.Ct. 1295, 86 L.Ed. 1767; cf. Lillian O. Fehrman, Executrix, 38 B.T.A. 37; Estate of Mary A. Bedford, 40 B.T.A. 475; Estate of George W. Wickersham, 44 B.T.A. 619, dismissed (C.C.A., 2d Cir., Feb. 9, 1942); Estate of Lewis Cass Ledyard, Jr., 44 B.T.A. 1056."

Having failed to file a timely petition for redetermination of the 1938 deficiency that tax was assessed and the plaintiff paid it in installments to three different collectors. Thereafter he brought two suits to recover the amounts thus paid. The district court entered judgment in his favor for the full amounts claimed. 77 F.Supp. 919. The consolidated appeals now before us were thereupon taken by the Government.

■ The sum of $50,000 which the plaintiff received as administrator of the decedent's estate unquestionably represented compensation due the decedent for services rendered by him. As such it clearly was an item of gross income within the definition of Section 22(a) of the Revenue Act of 1938, 26 U.S.C.A. § 22(a). There can be no doubt in the light of Section 42 of the Revenue Act of 1936, as interpreted in Helvering v. Enright, 1941, 312 U.S. 636, 61 S.Ct. 777, 85 L.Ed. 1093, that it was the intention of Congress that such an item of income as this should be taxed either in the year in which the decedent died, if it could be regarded as having accrued at the time of his death, or in the year in which it was actually received by his administrator, if it had not so accrued at his death. See also Estate of Putnam v. Commissioner, 1945, 324 U.S. 393, 65 S.Ct. 811, 89 L.Ed. 1023, 158 A.L.R. 1426. Under the decision of the district court, however, the item escapes income taxation altogether. This, we think, is plainly wrong and results from the failure of the district court to give appropriate effect to the decision of the Board of Tax Appeals with respect to the decedent's 1937 tax liability.

While the Board in its opinion talked about the possibility of the claim against Thompson having constructive value, con-sidered retrospectively, as of the date of the decedent's death, its decision was that the claim had no accrued value at that time, within the meaning of Section 42. This was necessarily a determination that for tax purposes the claim was without value at the date of the decedent's death.

■ The district court took the view that it was not bound by the Board's decision which, as it suggested, might have been in error. Under the principles of res judicata, however, the plaintiff was estopped by the Board's decision from making any contention in the present suits based upon the premise that the claim did have value at the time of the decedent's death. Commissioner v. Sunnen, 1948, 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898. In denying this effect to the Board's decision the court erred.

■ Considering then, as we must, that the sum of $50,000 received by the plaintiff as administrator of Archer's estate in 1938 represented the payment of a disputed claim for compensation which had no value at the date of Archer's death, we hold that the amount was subject to income tax when it was received. This follows on two grounds. In the first place it was taxable under Section 22(a) of the Revenue Act of 1938, as a payment of compensation received in that year which had not accrued in any definite or ascertainable amount at the date of the decedent's death. Bull v. United States, 1935, 295 U.S. 247, 55 S.Ct. 695, 79 L.Ed. 1421; Estate of Putnam v. Commissioner, 1945, 324 U.S. 393, 65 S.Ct. 811, 89 L.Ed. 1023, 158 A.L.R. 1426. In the second place, disregarding its nature as a payment of compensation and considering it merely as the payment of a debt due to the decedent's estate, the amount received in 1938 involved a taxable gain, within the meaning of Section 22(a), over the value of the claim at the time of the decedent's death which, as we have shown, was established by the decision of the Board of Tax Appeals to be nothing. United States v. Safety Car Heating Co., 1936, 297 U.S. 88, 56 S.Ct. 353, 80 L.Ed. 500; Helvering v. Roth, 2 Cir. 1940, 115 F.2d 239; Herbert's

Estate v. Commissioner of Internal Revenue, 3 Cir. 1943, 139 F.2d 756. It follows that the income tax assessed upon Archer's estate for the year 1938 was properly assessed and collected and that the plaintiff was not entitled to recover it.

■ One further point remains to be considered. In addition to the tax imposed for the year 1938 upon the receipt of the sum of $50,000 here in question the Commissioner imposed a 25% penalty by reason of the failure of the administrator, the present plaintiff, to file an income tax return for that year. The plaintiff excuses his failure and seeks to avoid the penalty upon the sole ground that he was advised by counsel that it was unnecessary to file the return. There is no controversy as to the facts, which were stipulated. They disclose that although the plaintiff did file an income tax return for 1937 this item was not reported therein and no tax return whatever was filed for 1938 although, as the item represented a payment for compensation for services, it is difficult to believe that the taxpayer and his counsel could have been wholly oblivious to the fact that it was subject to income tax in one year or the other. Moreover, while he included the claim against Thompson in the estate tax return he did so in a way which did not put the Commissioner on notice that it represented compensation or that it was probably without value at the date of the decedent's death. In our opinion the facts do not justify the conclusion that the plaintiff's failure to file an income tax return for the year 1938 was due to reasonable cause and not to willful neglect. Plunkett v. Commissioner of Internal Revenue, 1 Cir.1941, 118 F.2d 644; Fides, A. G., v. Commissioner of Internal Revenue, 4 Cir.1943, 137 F.2d 731; Credit Bureau of Greater New York v. Commissioner of Int. Rev., 2 Cir.1947, 162 F.2d 7.

The judgments of the district court will be reversed and the causes will be remanded with directions to dismiss the complaints.