## FIRST NAT. BANK & TRUST CO. OF MONTCLAIR et al. v. MANNING.

### No. 10628.

United States Court of Appeals Third Circuit.

Argued April 10, 1952.

Decided May 6, 1952.

Rehearing Denied June 2, 1952.

Joseph J. Biunno, Newark, N. J. (Lum, Fairlie & Foster, Newark, N. J., on the brief), for appellant.

Howard P. Locke, Washington, D. C. (Ellis N. Slack, Acting Asst. Atty. Gen., A. F. Prescott, Louise Foster, Sp. Assts. to Atty. Gen., Grover C. Richman, Jr., U. S. Atty., Roger M. Yancey, Asst. U. S. Atty., Newark, N. J., on the brief), for appellees.

Before BIGGS, Chief Judge, and GOODRICH and HASTIE, Circuit Judges.

GOODRICH, Circuit Judge.

This case involves the question of income taxation under the Act of 1940. The executors of the estate of William J. Wells have paid the disputed tax and sue to get it back on the ground that the assessment of the tax was not in accordance with law. The collector won in the District Court of New Jersey and the executors appeal.

The case grows out of undisputed facts. Mr. Wells was the former president of L. Bamberger & Company, a well-known merchandising firm of Newark, New Jersey. A contract was made between him and Bamberger & Company on February 1, 1939. By its terms Mr. Wells was to do two things: A. Remain in the employment of the corporation for a period of ten years and render to the corporation such advisory services as should be assigned to him. B. Not to engage in the retail merchandising business in Newark, New Jersey. On its side the Company agreed to pay Mr. Wells a salary of $12,500 per annum. In case of his death prior to the end of the ten-year period the corporation promised to pay to his estate an amount equal to the excess of $105,000 over what had been paid to him as salary since February 1, 1939.

On March 22, 1940, Mr. Wells died. His executors received from L. Bamberger & Company a lump sum payment of $91,458.-33. The Commissioner claimed that this payment was subject to income tax and should have been included in the income tax return of Mr. Wells for the period January 1 to March 22, 1940.

The statutory provision on which the case turns is the last sentence of Section

42(a) of the Revenue Act of 1940, 26 U.S. C. § 42(a). The language is not new for the statute of that year and is found in the corresponding section of the acts beginning 1934. The language is as follows:

"In the case of the death of a taxpayer there shall be included in computing net income for the taxable period in which falls the date of his death, amounts accrued up to the date of his death if not otherwise properly includible in respect of such period or a prior period."

Had this $91,000 which Bamberger & Company paid to Mr. Wells' executors "accrued up to the date of his death?" That is the sole question in the case.

We are not helped by the concept of accrual as it is used by accountants. This provision of the statute is one to put cash basis taxpayers on something comparable to a technical accrual basis where the taxpayer's death comes within a taxable year.[1] The closest case we have which is helpful is Helvering v. Estate of Enright, 1940, 312 U.S. 636, 61 S.Ct. 777, 85 L.Ed. 1093. There the Supreme Court held that a lawyer partner's share in earned but uncollected fees for the year in which he died was income to the taxpayer for that year although both the individual taxpayer and his firm had been on a cash basis during the taxpayer's lifetime.

This case is not quite in point although the government presses it hard. Mr. Enright and his partners had done work for which charges either were or could have been made prior to Mr. Enright's death. Mr. Wells in this case could not have written up anything against his employer so long as the employer continued to pay him according to the terms of the contract. In other words, there were no services performed by Mr. Wells which were a charge against all the unpaid portion of this $105,000.

On the other hand, it is hard to escape the conclusion that the balance of this $105,000 had accrued to Mr. Wells at the instant of his death.[2] Upon his death he obviously would never engage in retail business in Newark, New Jersey. Obviously, too, he would be excused because of impossibility from giving further business advice to the concern of which he had been president. Upon his death, he having performed his part of the contract up to then, his personal representatives became entitled to the balance of the fund of $105,000 according to the terms of the contract. Their right to have this payment accrued at the very instant of the death of Mr. Wells. We think that the case comes within the terms of the statute.

Congress passed some relief provisions for cases like this in 1942.[3] The statute also contained a provision for letting the reme-

1. H. Rep. No. 704, 73d Cong., 2nd Sess., p. 21; S. Rep. No. 558, 73d Cong., 2nd Sess., p. 28.

2. Petitioner's counsel urges the case of Estate of Putnam v. Commissioner of Internal Revenue, 1945, 324 U.S. 393, 65 S.Ct. 811, 89 L.Ed. 1023, which is readily distinguishable. In that case dividends declared before the taxpayer's death to stockholders of record on a date after his death were held not covered by § 42 (a). There, of course, nothing accrued until after the taxpayer's death.

3. The Revenue Act of 1942 in § 134 amended § 42(a) to read: "In case of the death of a taxpayer whose net income is computed upon the basis of the accrual method of accounting, amounts * * * accrued only by reason of the death of the taxpayer shall not be included in computing net income for the period in which falls the date of the taxpayer's death."

§ 134(e) of the Revenue Act of 1942 inserted new section 126 of the Code providing:

"126 Income in respect of decedents

"(a) Inclusion in gross income.

"(1) General rule. The amount of all items of gross income in respect of a decedent which are not properly includible in respect of the taxable period in which falls the date of his death or a prior period shall be included in the gross income, for the taxable year when received, of:

"(A) the estate of the decedent, if the right to receive the amount is acquired by the decedent's estate from the decedent * * *."

See Note, Income in Respect of Decedents: The Scope of Section 126, 65 Harv.L.Rev. 1024 (1952).

dial effort operate retroactively. Any possibility of relief in this section is not before us in this appeal. It is discussed, however, by the district court. N.J.1951, 100 F.Supp. 892.

The judgment of the district court will be affirmed.