**FARMERS GRAIN DEALERS ASS'N OF IOWA (COOPERATIVE)**

v.

**UNITED STATES.**

Civ. No. 1-203.

United States District Court
S. D. Iowa, Davenport Division.

Oct. 28, 1953.

Alan Loth, Fort Dodge, Iowa, for plaintiff.

Robert J. Spayde, Asst. U. S. Atty., Oskaloosa, Iowa, Harold H. Bacon, Sp. Asst. Atty. Gen., Tax Division, and Roy L. Stephenson, U. S. Atty., Des Moines, Iowa, for defendant.

RILEY, District Judge.

This is an action for refund of income taxes, some claimed to have been erroneously reported by the taxpayer and paid for the fiscal year 1947, and some to have been erroneously assessed by the Commissioner and paid as a deficiency for the fiscal years 1948 and 1949. The amounts involved follow.

Taxable year
ending August 31

| | | |
|---|---|---:|
| 1947 | Reported and paid | $16,817.45 |
| 1948 | Assessed and paid | 1,313.89 |
| 1949 | Assessed and paid | 702.45 |

The issue here is whether the Commissioner erred in treating as income properly accruable to plaintiff in the three years, its alleged proportionate shares of a "Reserve for General Contingencies" later described in this memorandum. Plaintiff claims the amounts accrued to it were not actual or accruable income in the years in controversy and therefore were erroneously paid and assessed.

There is no issue as to the payments by the taxpayer, as to filing a proper claim for refund, nor as to the amounts to which plaintiff is entitled if it sustains its contentions.

The parties joined in a stipulation of facts and these are so found and incorporated in this memorandum by reference.

Plaintiff is an Iowa cooperative association with its principal place of business at Des Moines, Iowa. It makes its tax returns on an accrual basis and its fiscal year ended August 31.

Indiana Grain Cooperative, Inc., was an Indiana cooperative association with income tax exempt status, whose fiscal year ended May 31. (As of January 1, 1950, Indiana's corporate existence terminated by merger into Indiana Farm Bureau Cooperative.) Plaintiff was a stockholder and patron of Indiana during 1945 to 1949, inclusive.

The Articles of Incorporation and By-laws of Indiana grant to its directors full power to establish reserves, make patronage dividend refunds, etc. At their meeting May 26, 1947, Indiana's directors adopted a resolution reciting "the advisability of establishing reasonable contingency reserves of a substantial nature to protect against losses occasioned by decline in inventory values and for other reasons," and after allowing for dividends on outstanding stock and payment of patronage dividends, made provision "that this association carry out of remaining margins to contingency reserve (in) the sum of $750,-000.00 to remain, until application, the property of the patrons on whose patron-

age they were earned in ratio of such patronage." It was incorporated in the minutes of meeting that counsel for the association in presenting the resolution stated that "contingencies exist at the end of the fiscal year, such as income tax liability, which make earnings only estimated. If such contingencies should later prove groundless, the reserve will be distributed to patrons." This so-called "Contingency Reserve" was established in 1945.

The directors meeting of May 27, 1948, adopted a motion "that the reserve for general contingencies be increased by $150,000.00 from the earnings for the fiscal year ending May 31, 1948." Like action was taken at the meeting of May 27, 1949, which added $200,000 to the reserve for general contingencies.

On Indiana's books plaintiff was credited as of May 31, 1947, with $44,256.45; May 31, 1948, with $3,457.61; and on May 31, 1949, with $1,848.57. Letters of advice from Indiana to plaintiff were issued in each year involved, which were similar except for amounts. That issued in 1947 enclosed check to plaintiff for cash refund, informed plaintiff as to other matters and stated:

"For your organization the 1947 distribution is as follows:

"Reserve for general contingencies (1.608% of Patronage) $44,256.45."

Plaintiff contends that the circumstances attending the creation of the reserves for future contingencies and the handling of the same as revealed by the conduct of the parties, and because of the conditions, contingencies and further required action by directors of Indiana and its successor, the amounts were not and are not actually and really plaintiff's property and are therefore not income to plaintiff actually or to be so accrued, and hence cannot be taxable income.

In the light of the foregoing and of the facts disclosed by the pleadings and stipulation, we turn to the applicable law.

■ The Federal law controls. Estate of Putnam v. Commissioner of Internal Revenue, 324 U.S. 393, 65 S.Ct. 811, 89 L.Ed. 1023. The United States Treasury Department, Bureau of Internal Revenue, Regulations 111, Sec. 29.42–2, is in these words:

"*Income Not Reduced to Possession.*—Income which is credited to the account of or set apart for a taxpayer and which may be drawn upon by him at any time is subject to tax for the year during which so credited or set apart, although not then actually reduced to possession. *To constitute receipt in such a case the income must be credited or set apart to the taxpayer without any substantial limitation or restriction as to the time or manner of payment or condition upon which payment is to be made, and must be made available to him so that it may be drawn at any time, and its receipt brought within his own control and disposition.* A book entry, if made, should indicate an absolute transfer from one account to another. If a corporation contingently credits its employees with bonus stock, but the stock is not available to such employees until some future date, the mere crediting on the books of the corporation does not constitute receipt." (Emphasis added.)

In speaking of corporation dividends, it was said in the Estate of Putnam v. Commissioner of Internal Revenue, supra, 324 U.S. at page 399, 65 S.Ct. at page 814, 89 L.Ed. 1023: "The stockholder can acquire no interest in a dividend, amounting to an accrual under Section 42, before the amount of the dividend and the distributee is determined."

It is said in Home Furniture Co. v. Commissioner of Internal Revenue, 4 Cir., 168 F.2d 312, 313, that "Economic realities, not legal formalities, determine tax consequences".

■ In this case there is nothing to indicate that plaintiff could have demanded payment effectively, in 1947 or any subsequent year, of the amount of $44,256.45 then allocated, or of the amounts allocated in subsequent years.

To the contrary, Indiana was depleting the book entry credit to plaintiff by charging items to it. Indiana could have charged out the entire amount had contingencies developed. There was neither promise nor obligation on the part of Indiana to pay a definite amount to plaintiff until the contingencies were determined for which the reserve was originally created. Such determination was not made in 1947. There was never a time that the amount of $44,256.45, shown by Exhibit E of the Stipulation to have been allocated to plaintiff, or the amounts so shown to have been allocated in 1948 and 1949, became subject to plaintiff's "unqualified demand," and "none of the parties understood that it was" to be. See Avery v. Commissioner, 292 U.S. 210, 215, 54 S.Ct. 674, 677, 78 L.Ed. 1216. "It is the command of the taxpayer over the income which is the concern of the tax laws." Commissioner of Internal Revenue v. Tower, 327 U.S. 280, 290, 66 S.Ct. 532, 537, 90 L.Ed. 670. Harrison v. Schaffner, 312 U.S. 579, 581, 61 S.Ct. 759, 85 L.Ed. 1055. If, by passing to plaintiff's credit on its books, Indiana gave to plaintiff the command over the amounts allocated, which is the "concern of the tax laws," and that amount was available to plaintiff without diminution when distribution was to occur and it had control over distribution, or the time of distribution had been fixed, there might be basis for accruing it as income to plaintiff. However, it has been held in this Circuit, Northwestern States Portland Cement Co. v. Huston, 8 Cir., 126 F.2d 196, that "Bookkeeping entries do not produce either income or losses for purposes of taxation". They are intended to record facts, "but are merely evidential and do not create or destroy facts." It was said in Sitterding v. Commissioner of Internal Revenue, 4 Cir., 80 F.2d 939, 941, that "The bookkeeping creates nothing, and the question must be decided according to proven and established facts." See also Welp v. U. S., 8 Cir., 201 F.2d 128. It is said in that case, 201 F.2d at page 130:

"The objective of the Internal Revenue Code is the ascertainment and reporting of true income and the payment of the proper tax thereon. That objective should not be subordinated to formal methods or practices of bookkeeping or accounting to the extent that income actually accruing in one year be treated as accruing in another by reason of the application of a method of accounting."

The court must find that in this case there was never a time in 1947 (nor since, so far as the record reveals) when the amount of the distribution, to be made to plaintiff for any of the years involved, was ascertainable without a formal order of distribution by Indiana of reserves at a given time and in a given amount. Until determination as to amount of distribution had been made by the authority of Indiana, it would not be possible to ascertain or determine the amount to which plaintiff would be entitled, and hence it would not be possible to accrue an ascertainable amount as income. The conduct of the parties is consistent with no other finding.

It is said in Security Flour Mills Co. v. Commissioner of Internal Revenue, 321 U.S. 281, 284, 64 S.Ct. 596, 597, 88 L. Ed. 725: "It is settled by many decisions that a taxpayer may not accrue an expense the amount of which is unsettled or the liability for which is contingent". By the same token, he should not be compelled to accrue as income an amount which is unsettled or the availability of which to him is so highly contingent. The very nature of these reserves made them so and invested them with that uncertainty.

Fountain City Co-op, etc., v. Commissioner of Internal Revenue, 7 Cir., 172 F.2d 666, involved the tax liability of a Wisconsin dairy cooperative. The association had set up a "Patrons' Equity Reserve," which, it was claimed, was the property of its patrons and should not have been included in the gross income of the taxpayer. The opinion holds, 172 F.2d at page 667, that "What part, if

any, should go to the patrons rested in the discretion of the board of directors or a majority of the stockholders" according to Wisconsin law, and "Until distributed, it all belonged to the association." The last paragraph of the opinion describes what this court finds to be the situation here.

"It is clear from the foregoing that instead of this patrons' equity reserve belonging to the patrons, it never left the control of the association which continued to treat it as its own. Its creation lay within the absolute discretion of the taxpayer's (Indiana's) directors or stockholders and after creation, its continued existence was wholly at the will of the taxpayer's (Indiana's) directors. This reserve never belonged to the patrons. It was and always remained the property of the taxpayer (Indiana) and was properly included by the Commissioner in the taxpayer's gross income." (Parentheses added.)

I find the issues, therefore, in favor of the plaintiff. This memorandum of decision, with the stipulation of facts and the recitals in this memorandum, is adopted as the findings of fact and conclusions of law in the contemplation of Rule 52 of the Federal Rules of Civil Procedure, 28 U.S.C.A. The Court having made its findings of fact and conclusions of law as contained in the memorandum opinion filed herein;

It is ordered that plaintiff, Farmers Grain Dealers Association of Iowa (Co-operative), have judgment against the defendant, United States of America, for the amount of $16,817.45 paid as taxes for the fiscal year ending August 31, 1947, and the amount of $1,313.89 paid as a deficiency for the fiscal year ending August 31, 1948, and $702.45 paid as a deficiency for the fiscal year ending August 31, 1949, with interest as provided by law, and for the costs of this action.

It is ordered that the amount of the judgments here entered will be subject to verification by the parties as to the correctness of the computation, and in the event of any disagreement with respect thereto, the matter will be reported to the Court for further entry.

An exception is allowed to defendant.