CLARK, Collector of Internal Revenue, v. WOODWARD CONSTRUCTION CO.

WOODWARD CONSTRUCTION CO. v. CLARK, Collector of Internal Revenue.

Nos. 3930, 3931.

United States Court of Appeals Tenth Circuit.

Jan. 3, 1950.

Carleton Fox, Washington, D. C. (Theron Lamar Caudle, Assistant Attorney General; Ellis N. Slack, A. F. Prescott, and Harry Baum, Special Assistants to the Attorney General (John C. Pickett, United States Attorney and John S. Miller, Assistant United States Attorney, Cheyenne, Wyo., on the brief), for Frank G. Clark, Collector.

E. Keith Thomson, Cheyenne, Wyo. (James R. Felt, Billings, Montana, and Henderson & Thomson, Cheyenne, Wyo., on the brief), for Woodward Construction Co.

Before PHILLIPS, Chief Judge, and BRATTON and HUXMAN, Circuit Judges.

HUXMAN, Circuit Judge.

These appeals involve income taxes of the Woodward Construction Company, herein called the taxpayer, for the years 1941 and 1942. In Number 3930, the trial court held in favor of the taxpayer and entered judgment accordingly, and the Collector has appealed. In Number 3931, the court held in favor of the Collector, and the taxpayer has appealed.

### Number 3930

The facts in this case are as follows: On June 23, 1942, the State Highway Commission of Wyoming entered into a contract with the Woodward Construction Company for certain highway construction. The contract provided for monthly payments based upon estimates as provided for in the contract. It provided that payment for the final estimate, including 15% of the partial estimates retained during the period of the contract, should not be due or payable until 40 days notice of final settlement and acceptance of the work had been given by publication and posting of notices in the manner required by the laws of Wyoming. All the work under the contract was completed in 1942. The Highway Commission had accepted the work and had paid 85% of the contract price in 1942. The balance of 15%, amounting to $17,471.12, was withheld pending the publication of the statutory notice. The publication time of the notice expired January 20, 1943. No claims having been submitted against the contractor, the balance of $17,471.12 was paid to the taxpayer on January 21, 1943. The taxpayer at all times in question kept its books both in this case and in Number 3931 on the accrual basis for income tax purposes. It reported the entire amount of $17,471.12 in its income and excess profits tax return for 1942. Thereafter, it filed a claim for refund for the amount of taxes paid thereon. The claim for refund was denied, and this suit was instituted to recover such taxes. Judgment was entered for the taxpayer and the Collector has appealed.

Where a taxpayer keeps his books and makes his tax returns on the accrual basis, income accrues when all events have accrued from which liability is determined and the liability has become fixed even though payment is deferred to a time in a subsequent year. The decisive factor is the creation of an enforceable liability.[1]

In Spring City Foundry Co. v. Commissioner, 292 U.S. 182, 54 S.Ct. 644, 645, 78 L.Ed. 1200, the Supreme Court said: "Keeping accounts and making returns on the accrual basis, as distinguished from the cash basis, import that it is the right to

---

[1]. U. S. v. Anderson, 269 U.S. 422, 441, 46 S.Ct. 131, 70 L.Ed. 347; Laws of Federal Income Taxation, Mertens, Volume 2, Par. 1260, et seq.

Estate of Putnam v. Commissioner, 324 U.S. 393, 399, 65 S.Ct. 811, 89 L.Ed. 1023, 158 A.L.R. 1426; Dixie Pine Products Co. v. Commissioner, 320 U.S. 516, 519, 64 S.Ct. 364, 88 L.Ed. 420.

receive and not the actual receipt that determines the inclusion of the amount in gross income. When the right to receive an amount becomes fixed, the right accrues."

■ All these conditions with respect to the $17,471.12 accrued in 1942. The contractor had completed the work in that year and the Highway Commission had accepted it. The State's obligation to pay therefor had become fixed and absolute in 1942. The taxpayer had the absolute title to this sum and the right to receive it prior to the expiration of that year. Only the time of payment was postponed 40 days to enable the statutory publication notice to be given to any claimants who might have claims against the contractor. Had claims been filed and paid by the State, they would have been paid from the sum withheld, but they would nonetheless have been paid with money that was the absolute property of the taxpayer, and he could have deducted such payments from his gross income in his income tax return as business expenses.

The trial court relied upon Lucas, Commissioner, v. North Texas Company, 281 U.S. 11, 12, 50 S.Ct. 184, 74 L.Ed. 668, in concluding that this sum had not been accrued until 1943. The Lucas case is, however, distinguishable upon the facts. In that case the contract involved concerned the sale of a saw mill. It gave the purchaser a ten-day option to purchase. On December 30, within the ten-day period, the vendee gave notice declaring itself ready to close the transaction and pay the purchase price *"as soon as the papers were prepared."* This did not occur until the following year. The Supreme Court held that the unconditional liability for the purchase price was not created until the papers were executed and that since this event did not take place until the following year, the liability did not become absolute until the later year. Accordingly, the court held that the income accrued and was earned in that year.

### Number 3931

In 1939, the taxpayer, by action of its Board of Directors, fixed the President's salary at $7500.00 per year, and the salary of its Secretary at $1800.00 per year. The taxpayer was financially distressed and only paid its President $2500.00 of his salary, and its Secretary $600.00 of her salary for the year 1939. In 1941, the taxpayer paid the balance of the Secretary's 1939 salary in the amount of $1200.00 and claimed such payment as a deduction in its 1941 income tax return. In 1942, the taxpayer paid the balance of the President's 1939 salary in the sum of $5,000.00, and took this as a deduction in its 1942 income tax return. The claims for refund on account of the payment of these items were denied, whereupon the taxpayer instituted this action to recover the amount thereof. The trial court found specifically that neither the President nor the Secretary of the taxpayer waived his or her right to the balance of the salary due them for 1939, and concluded that such balances accrued in 1939 and could not be taken as deductions in 1941 and 1942. Judgment was accordingly entered for the Collector in this case, and the taxpayer has appealed.

The court's finding that the unpaid portion of their 1939 salaries was not waived by the President and Secretary is clearly borne out by the following excerpts from the taxpayer's books. The minutes of December 26, 1939, contained the following notations: "All salaries now being paid to the various officers were discussed and on motion made, seconded, and carried, these salaries were to be continued. At this point, however, it was shown that the President and Secretary had only received one-third of their 1939 salaries. There still remains unpaid to M. W. Woodward $5,000.00 and to Elfrieda Bond $1,200.00. These amounts were waived by both for this year, but with the understanding, that when the finances of the Company will warrant the payment of all or any part of these balances to either party, the Secretary is authorized to make such payments as funds will consistently warrant."

The minutes of December 27, 1940, contained the following notations: "The president called attention to the stockholders that in the past two years, he and the secretary have been unable to take all the sal-

ary due them, namely, $5000.00 in 1939 and $3300.00 in 1940 for the president and $1200.00 in 1939 for the secretary. These salaries were set up at a time when the Company's volume of business warranted them. For the past three years, the economic condition of the country has so changed and the volume of business has been so decreased that he advises that the salary of both the president and the secretary be lowered, namely, to $4800.00 a year for the president and to $1200.00 a year for the secretary beginning January 1, 1941. *In doing this however, the unpaid salaries of 1939 and 1940 are not waived and will be paid as conditions permit.*"

The minutes of December 21, 1942, contained the following: "The financial condition of the company had improved sufficiently in 1941 that Elfrieda Bond was able to draw the back salary due her from previous years. The condition of the company had sufficiently improved in 1942 that the Stockholders this day approved that payment of the back salary due *W. M. Woodward* which had been waived in 1939 until conditions would warrant the payment. This amount was $5,000.00."

From these minutes, it becomes clear that the salaries in question were earned in 1939 and that in that year the taxpayer's liability for their payment became absolute and fixed. The minutes also make it clear that the right to receive these salaries was never waived or relinquished and that the obligation to pay them remained a fixed liability from the day when they accrued. All that the President and Secretary did was to waive their right to receive these salaries in 1939. The effect of what they did was to give the taxpayer an extension of time within which to make payment of an absolute obligation.

 What has been said in Number 3930 with respect to the factors which fix the liability for income of a taxpayer who keeps his books on the accrual basis, applies with equal force when the question is the right to take a deduction for a business expense and the duty to take it in the year in which it accrues. The taxpayer's liability to its President and Secretary for the 1939 salaries accrued and became fixed in 1939, and as pointed out this liability was never released or relinquished. All that was done was to give the taxpayer an extension of time within which to discharge this accrued and fixed liability. The deductible obligations for the balance of these salaries likewise accrued in 1939, and the taxpayer was required to make them in that year and could not take them in the subsequent years when payment was finally made.

That portion of the judgment appealed from in Number 3931 is accordingly affirmed, and that portion of the judgment appealed from in 3930 is reversed, and as to it, the cause is remanded to the trial court with directions to proceed in conformity with the views herein expressed.